**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0978-24

AGNIESZKA DRUPKA,

    Plaintiff-Respondent,

v.

EASTERN INTERNATIONAL
COLLEGE and
BASHIR MOHSEN,

    Defendants-Appellants.

_____

Argued June 16, 2025 – Decided June 26, 2025

Before Judges Sabatino, Perez Friscia and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-0475-23.

Steven I. Adler argued the cause for appellants (Mandelbaum Barrett, PC, attorneys; Steven I. Adler and Michael C. Polychronis, of counsel and on the briefs).

Steven D. Cahn argued the cause for respondent (Cahn & Parra, PA, attorneys; Steven D. Cahn, on the brief).

PER CURIAM

Defendants Eastern International College ("Eastern") and Bashir Mohsen appeal from the November 8, 2024 Law Division order denying their motion to compel arbitration of plaintiff Agnieszka Drupka's employment claims. Having reviewed the record, parties' arguments, and applicable legal principles, we affirm.

I.

Eastern operated a private educational institution of higher learning with campuses in Belleville and Jersey City. Mohsen was Eastern's chief executive officer. In October 2014, Eastern initially hired Drupka as an accountant, and in 2017, Eastern promoted her from chief operating officer to acting campus director.

After working at Eastern for over seven years, Drupka resigned in April 2022 because Mohsen allegedly engaged in a course of sexual harassment and discrimination against her. In January 2023, Drupka filed a complaint alleging defendants violated: the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50; the New Jersey Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14; and Pierce.[1] She specifically averred defendants:

---

[1] Pierce v. Ortho Pharm. Corp., 84 N.J. 58 (1980).

A-0978-24

"created a hostile work environment directed at" her as a woman; retaliated against her after complaining of unlawful discriminatory conduct; and constructively terminated her employment.

On May 8, 2023 defendants moved before the trial court to compel arbitration of Drupka's employment claims. In support of their motion, defendants submitted an employment agreement, which Drupka purportedly entered, witnessed, and signed. The employment agreement (the first agreement) contains arbitration provisions and is titled "AT-WILL EMPLOYMENT AGREEMENT WAIVER OF RIGHT TO LITIGATE AND ALL DISPUTES GO TO ARBITRATION FOR SALARIED EMPLOYEE (NOT HOURLY)." The first agreement has handwritten in Drupka's position as campus director and "Acting President" scratched out. The first eight pages are double spaced. Drupka's initials appear differently on each page, and there are two pages numbered nine. The first page nine is blank, and the other is the document's last page, which is single-spaced with Drupka's signature, and was witnessed and dated March 7, 2019. Further, page eight ends in the middle of a sentence. In support of defendants' motion to compel arbitration, Mohsen certified that Drupka signed the first agreement, which "contain[ed] a very broad

A-0978-24

arbitration clause" that "cover[ed] all claims arising out of or related to her employment, including employment claims."

On May 15, in opposition to the motion to compel arbitration, Drupka certified she did not sign the first agreement. Drupka represented that the first agreement was fraudulently altered, and "[t]he signature page at the end of th[e] document c[ame] from a proper employment agreement signed in March of 2019." She certified that "on the last day [she] was physically present for work at Eastern," Mohsen directed her to sign an agreement that looked similar to the first agreement. Drupka declined, believing "he was attempting to get [her] to sign so he could fire [her], and [she] would not be able to sue."

In a second certification dated August 21, Mohsen again certified Drupka signed the first agreement. In support of this contention, Mohsen alleged the arbitration "clause [wa]s contained in agreements employees signed both before and after" Drupka's employment. His certification failed to address why other agreements submitted as evidence varied from the first agreement. Mohsen's certification referenced George Caceres, Esq.'s, Eastern's former chief equal employment opportunity officer and legal liaison, certification. Caceres certified that: "there was an arbitration clause in each and every one of" Eastern's employment agreements; Drupka had "signed an [a]greement . . . in

[his] presence"; and he "would only sign the agreement if it was signed and initialed in front of [him]."

On August 25, Caceres clarified in a second certification that after reviewing the alleged first agreement, he: noticed "there [we]re two pages numbered . . . nine"; was "not at all familiar with the initials on the bottom left of pages one to eight"; noted "there [we]re inconsistencies in the spacing between the sentences on the document"; observed "that from page one to eight, there [wa]s one setting of the spacing . . . different from the spacing of the sentencing on the signature page nine"; and saw "there [wa]s a missing section." While he could authenticate his and plaintiff's signature on the last page, Caceres stated he "would not [have] allow[ed] any person to initial or sign the agreement" with the missing section, blank page, and two page nines.

On September 20, after argument on the motion, the court determined a plenary hearing was necessary to resolve authenticity questions surrounding the first agreement and whether the arbitration clause was enforceable. Thereafter, defendants moved to compel Drupka's deposition, limited to whether there was an enforceable arbitration agreement, which the court granted.

On November 22, 2023, defendants' counsel alerted Drupka's counsel that another signed employment agreement was located. The newly-discovered

A-0978-24

employment agreement (the second agreement) also includes arbitration provisions and is titled "AT-WILL EMPLOYMENT AGREEMENT." Defendants discovered the second agreement "within a 'zip file'" attached to an email Drupka had sent on November 18, 2019. The second agreement: is nine pages; has similar line spacing throughout; and appears to have the same exact last page as the first agreement. Notably, the arbitration section is titled "ARBITRATION IS MANDATORY" and is the only section heading title in all caps, as the other section headings are underlined and bolded. Also, paragraph nine of the second agreement's arbitration section is the only paragraph in the second agreement without justified margins.

At her deposition, Drupka testified that she only signed two agreements during her employment with Eastern. She remembered signing "documents" in October 2014 and an employment agreement later in March 2019, which contained an arbitration clause but not the arbitration language in the first or second agreements she alleged defendants fraudulently altered. Drupka specifically recalled her signed 2019 employment agreement's content because she had "a week prior to . . . signing" to review it. Drupka maintained she had "read it[,] and it was very clear to [her] that . . . just a minor issue . . . would be delegated to arbitration," and she was not "waiving all [her] rights in terms of

6

not being able to file the lawsuit in case of discrimination." Further, she testified that near the time she "went out on a second [disability] leave on April 25," she saw a copy of the first agreement Mohsen was wrongly alleging she had signed. Specifically, Drupka stated she "saw it on the last day, but . . . around two weeks prior [to] that . . . Mohsen was calling [her] . . . and telling [her] that [she] ha[d] to sign an employment agreement." Drupka recalled telling Mohsen she was "not going to sign [an] employment agreement because [she] already signed the employment agreement." She further testified that, at the time, Mohsen "said this [wa]s a new one with the new enhanced arbitration clause."

Drupka testified that after Mohsen tried to force her to sign a different agreement, she filed "a complaint . . . with the chief of staff Dr. Southard."[2] Drupka allegedly told Dr. Southard that Mohsen was chasing her "down and trying to [have her] sign a new employment agreement" because he was "trying to take away rights from [her]." She also alleged Mohsen had previously threatened her. Drupka relayed that Mohsen stated if she ever tried "to do something or go after him, . . . he w[ould] create evidence, would destroy" her, and would "send [her] to jail." Drupka also addressed the second agreement, alleging: defendants copied and pasted the second agreement's arbitration

_____

[2] Dr. Southard's first name is not in the record.

A-0978-24

paragraph into the document; she remembered her employment agreement did not waive all claims from court; she had no recollection of the arbitration language; and her initials were not accurate. She testified both purported agreements were altered, as evidenced by Eastern's failure to produce the original document. Drupka noted that some Eastern employees had included modified arbitration paragraphs in their employment agreements because Eastern had changed the arbitration provision after losing a lawsuit. Drupka explained that in 2019, an Eastern employee filed a lawsuit that started "the whole arbitration clause issue," because the prior arbitration language "was deemed to be invalid."

At the November 2024 plenary hearing, the court heard testimony from: defendants' counsel, Michel Polychronis, Esq.; Mohsen; and Drupka. Polychronis testified to receiving a November 18, 2019 email that had an attached "zip folder with documents." Polychronis opened the folder containing employment agreements. He reviewed and compared the second agreement's arbitration provisions Drupka allegedly signed to other employees' agreements with arbitration provisions. He stated, "[T]hey were very similar." Polychronis advised he was given access to Drupka's emails, spoke with Mohsen, and found

A-0978-24

the zip folder in one of Drupka's sent emails. Polychronis testified that he "d[id not] know" if "someone else modified any of the documents."

Drupka testified the second agreement contained her signature on page nine, but she was never given that agreement to sign. She asserted that for about two weeks prior to her last day of work, Mohsen was "harassing" her to "sign a new employment agreement." She refused to sign the agreement after reviewing it, and she maintained the agreement he showed her was similar to the first agreement. Drupka testified to entering an employment agreement but was adamant she did not sign the second agreement with what she maintained were altered arbitration provisions. Drupka was steadfast that: she never entered the first or second agreement; the signed page nine attached to defendants' offered agreements was from the actual agreement she had entered; and the obvious discrepancies in defendants' proffered agreements showed she entered neither agreement.

Mohsen testified to finding the first agreement in Drupka's office and that Drupka entered into the agreement because he recalled that she incorrectly listed her employment title as acting president. Regarding the second agreement, he testified that Drupka "issued the [employment] contract." He conceded on

9

cross-examination that Caceres was responsible for drafting the employment agreements. Mohsen denied requesting Drupka sign a different agreement.

After the hearing, the court issued an order accompanied by an oral opinion denying defendants' motion to compel. The court found there was "a big question mark" whether the parties entered an employment agreement with a binding arbitration provision. After observing the witnesses and considering the evidence, the court found defendants failed to produce an authentic agreement warranting it to compel arbitration. The court observed that defendants represented Drupka signed two different employment agreements. It specifically found the first agreement appeared "cobbled together" and "incomplete." Regarding the second agreement, which defendants produced as a PDF, the court noted defendants provided no forensic evidence establishing the purported agreement, as presented, was unaltered. Ultimately, the court found there were "too many questions revolv[ing] . . . [around] the[] two agreements for [it] . . . to say . . . there[ wa]s a binding agreement" between the parties to arbitrate, and defendants failed to authenticate either agreement.

On appeal, defendants contend reversal is warranted because the court: (1) "was required to compel arbitration because [Drupka] failed to set forth a specific challenge to the operative agreement's arbitration provision"; (2) erred

in failing to make sufficient factual findings "concerning the enforceability of the operative agreement and the parties' agreement to arbitrate"; (3) erroneously focused solely on the "incomplete agreement," the first agreement, while ignoring vital testimony about an enforceable arbitration provision in the second agreement; (4) erred in refusing to order arbitration because the court ignored clear and conspicuous evidence that the second agreement contained an enforceable arbitration clause.

## II.

Orders compelling or denying arbitration are treated as final orders for purposes of appeal. R. 2:2-3(3); GMAC v. Pittella, 205 N.J. 572, 582 n.6 (2011). "Whether a contractual arbitration provision is enforceable is a question of law, and we need not defer to the interpretative analysis of the trial . . . court[] unless it is persuasive." Gayles v. Sky Zone Trampoline Park, 468 N.J. Super. 17, 23 (App. Div. 2021) (alteration in original) (quoting Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 316 (2019)). "When 'construing an arbitration provision of a contract,' . . . a de novo standard of review is applicable." Kopec v. Moers, 470 N.J. Super. 133, 159 (App. Div. 2022) (quoting Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 446 (2014)).

11

A trial court's factual findings are reviewed for an abuse of discretion. <u>See</u> <u>Cumberland Farms, Inc. v. N.J. Dep't of Env't. Prot.</u>, 447 N.J. Super. 423, 437-38 (App. Div. 2016). "Factual findings premised upon evidence admitted in a bench trial 'are binding on appeal when supported by adequate, substantial, credible evidence.'" <u>Potomac Ins. Co. of Ill. ex rel. OneBeacon Ins. v. Pa. Mfrs.' Ass'n Ins. Co.</u>, 215 N.J. 409, 421 (2013) (quoting <u>Cesare v. Cesare</u>, 154 N.J. 394, 411-12 (1998)). Further, we will "'not disturb the factual findings and legal conclusions of the trial [courts]' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" <u>Allstate Ins. Co. v. Northfield Med. Ctr., P.C.</u>, 228 N.J. 596, 619 (2017) (quoting <u>Griepenburg v. Township of Ocean</u>, 220 N.J. 239, 254 (2015)).

"When reviewing a motion to compel arbitration, courts apply a two-pronged inquiry: (1) whether there is a valid and enforceable agreement to arbitrate disputes; and (2) whether the dispute falls within the scope of the agreement." <u>Wollen v. Gulf Stream Restoration and Cleaning, LLC</u>, 468 N.J. Super. 483, 497 (App. Div. 2021) (citing <u>Martindale v. Sandvik, Inc.</u>, 173 N.J. 76, 83, 92 (2002)). Generally, arbitration cannot be compelled unless the parties freely entered into an agreement to arbitrate. <u>See</u> <u>Marchak v. Claridge</u>

Commons, 134 N.J. 275, 281-82 (1993); see also Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 179 (2013). "[T]he party seeking to enforce . . . [an agreement to arbitrate] . . . has the burden to prove, by a preponderance of the evidence, that [the non-enforcing party] assented to it." Midland Funding LLC v. Bordeaux, 447 N.J. Super. 330, 336 (App. Div. 2016).[3]

"The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, and the New Jersey Arbitration Act (NJAA), N.J.S.A. 2A:23B-1 to -[36], represent a legislative choice 'to keep arbitration agreements on "equal footing" with other contracts.'" Ogunyemi v. Garden State Med. Ctr., 478 N.J. Super. 310, 315 (App. Div. 2024) (quoting Roach v. BM Motoring, LLC, 228 N.J. 163, 174 (2017)). "Under both statutes, 'arbitration is fundamentally a matter of contract,' and should be regulated according to general contract principles." Ibid. (quoting Antonucci v. Curvature Newco, Inc., 470 N.J. Super. 553, 561 (App. Div. 2022)).

Under the FAA, "a state may not 'subject an arbitration agreement to more burdensome requirements than those governing the formation of other contracts,'" or invalidate the agreement through "state-law 'defenses that apply only to arbitration or that derive their meaning from the fact that an agreement

---

[3] We have considered the parties' post-argument supplemental letter briefs regarding the burden of proof submitted upon our request.

to arbitrate is at issue.'" Skuse v. Pfizer, Inc., 244 N.J. 30, 47 (2020) (first quoting Leodori v. Cigna Corp., 175 N.J. 293, 302 (2003); and then quoting Atalese, 219 N.J. at 441). The FAA, however, does not bar all state-law defenses and "specifically permits states to regulate contracts, including contracts containing arbitration agreements under general contract principles." Ibid. (quoting Martindale, 173 N.J. at 85).

The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (EFA), Pub. L. No. 117-90, § 2(a), 136 Stat. 26, 26-27 (2022) (codified at 9 U.S.C. §§ 401-402), which was enacted on March 3, 2022, amended the FAA to prohibit the enforcement of arbitration agreements for "conduct constituting a sexual harassment dispute." 9 U.S.C. § 402(a). The EFA provides that "no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under . . . State law and relates to the sexual assault dispute or the sexual harassment dispute." Ibid. A "predispute arbitration agreement" is defined as "any agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement." 9 U.S.C. § 401(1). The amendment applies to any claim arising or accruing after the EFA's enactment on March 3, 2022. Pub. L. No. 117-90, § 3, 136 Stat. 28 (Mar. 3, 2022).

The New Jersey Legislature codified its endorsement of arbitration agreements in the NJAA.  See Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006).  The NJAA was enacted to "advance arbitration as a desirable alternative to litigation and to clarify arbitration procedures in light of the developments of the law in this area," Rappaport v. Pasternak, 260 N.J. 230, 247 (2025) (quoting S. Judiciary Comm. Statement to S. 514 (Dec. 9, 2002)), and "is nearly identical to the FAA," Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 133 (2020) (quoting Arafa v. Health Express Corp., 243 N.J. 147, 167 (2020)).

### III.

Defendants contend the court erred in denying their motion to compel arbitration and not making sufficient factual and credibility findings.  Defendants specifically argue:  Drupka failed to sufficiently challenge the validity of the second agreement; the evidence before the court weighed in favor of finding that the parties entered an employment agreement with an enforceable arbitration provision; and the court wrongly focused on the incomplete first agreement in denying the motion to compel.  We disagree.

After considering the evidence admitted at the plenary hearing, the court found defendants failed to present a valid employment agreement with an enforceable arbitration provision to warrant compelling arbitration.    It

A-0978-24

specifically determined defendants did not sufficiently authenticate either presented agreement. Undisputedly, defendants failed to produce an original signed employment agreement and had presented two separate agreements that the court was not "convinced" the parties legitimately entered.

Remarking that it already afforded the parties "a period of time to conduct discovery" on the arbitration issues, the court found defendants proffered agreements with "too many discrepancies." The court noted defendants had not shown Drupka entered an agreement to arbitrate or "waived her right to a jury trial." It found "too many questions . . . involving the[] two agreements for the Court to say . . . there[ wa]s a binding agreement" to arbitrate. The court highlighted that Polychronis only testified to having found the zip folder with the second agreement after receiving "access to [Drupka's] laptop," "look[ing] at the laptop," and "look[ing] at the sent folders." It reasoned defendants failed to produce a "forensic examination of [Drupka's] computer," which would have included a review of the "metadata to see who touched the" second agreement and "who made changes to the document." The court also found it troubling that Mohsen failed to sufficiently explain why he attested that the first agreement was the operative agreement.

We are mindful that we review de novo a court's construction of an arbitration agreement and its "determinations, premised on the testimony of witnesses and written evidence at a bench trial, in accordance with a deferential standard." Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 336 (App. Div. 2021) (quoting D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013)). "When reviewing the trial court's exercise of discretion, we do not 'decide whether the trial court took the wisest course, or even the better course, since to do so would merely be to substitute our judgment for that of the lower court[,]' which is an improper course of action." Burns v. Hoboken Rent Leveling & Stabilizing Bd., 429 N.J. Super. 435, 443 (App. Div. 2013) (alteration in original) (quoting Gillman v. Bally Mfg. Corp., 286 N.J. Super. 523, 528 (App. Div. 1996)) (internal quotation marks omitted).

After reviewing the record and the court's decision, we discern no error in its findings and ultimate conclusion that defendants failed to demonstrate Drupka entered an employment agreement containing an enforceable arbitration provision. We concur that defendants failed to meet their burden of demonstrating a valid arbitration agreement by a preponderance of the evidence because the agreements had significant discrepancies and inconsistencies. Further, it is undisputed Mohsen represented both agreements were the operating

17

agreement, casting doubt on the agreements' authenticity. The court's denial of defendants' motion to compel is sufficiently supported by the evidence.

As an independent basis for affirmance, Drupka argues that the application of the EFA bars "[e]nforcement of any arbitration agreement" because she claims "unlawful harassment, discrimination, retaliation, and sexual harassment, all based upon [her] gender or sex," which last occurred on April 8, 2022. See Bogey's Trucking & Paving, Inc. v. Indian Harbor Ins. Co., 395 N.J. Super. 59, 64 n.3 (App. Div. 2007) (stating "an alternative argument for affirmance . . . can be raised without cross-appeal"). The court did not reach the EFA argument because defendants failed to present an authenticated arbitration agreement. The court reasoned that it did not need to "interpret[] the language within the agreement" and decide whether the EFA applied until it was "first convinced that what[ had] been presented" was "in fact the operative agreement." The court correctly determined that it was unnecessary to reach Drupka's EFA arguments, and we therefore decline her invitation to address its application on appeal.

To the extent that we have not addressed defendants' remaining contentions, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0978-24